ORIGINAL

CLERK US DISTRICT COURT
NORTHERN DIST. OF TX
FILED

2018 MAR -6  AM 11: 59

DEPUTY CLERK_____

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

PHILLIP J. STERLING;

        Plaintiff,

    VS.

UNITED STATES OF AMERICA;

        Defendant.

Case No.:



3-18cv-526-D

## PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE COURT:

    COMES NOW PHILLIP J. STERLING, Plaintiff, complaining of the United States of America, Defendant, hereinafter referred to by name or as "Dallas VA" and for cause of action would respectfully show the Court the following:

### PARTIES

1.    Phillip J. Sterling is an individual citizen residing in Dallas County, Dallas, Texas 75228.

2.    Defendant United States of America operates the VA North Texas Health Care System in Dallas, Texas, which is healthcare facility authorized to provide medical services in the State of Texas. This facility operates at 4500 S. Lancaster Road, Dallas, Texas 75216.

3.    Defendant may be served with process by serving c/o Erin Nealy Cox, U.S. Attorney for the Northern District of Texas, 3rd Floor, Earl Campbell Federal Building, 1100 Commerce Street, Dallas, TX 75242.

1

## NOTICE

2

3

4.      On or about 4/22/2015, Plaintiff provided notice to Defendant of the claims herein sued

4    upon by submitting his SF 95 by certified mail, return receipt requested, to Dallas VA Risk

5    Management and received a reply.

6

7

5.      On September 20, 2017, the Plaintiff received a letter from the VA, E. Douglas

8    Bradshaw, Jr., Chief Counsel, Torts Law Group; stating this is the final denial of the Plaintiff's

9    tort claim.  The letter also states I have until March 20, 2018 to file a claim against the United

10   States of America.

11

12

## JURISDICTION AND VENUE

13

14

6.      This Court has venue over the parties to this action because the events or omissions

15   giving rise to the claim complained of herein occurred in the Northern District of Texas, Venue,

16   therefore, is proper in the Northern District of Texas pursuant to 28 U.S.C. 1391(E) (2).  Plaintiff

17   is suing for damages in excess of $75,000.

18

19

## FACTUAL BACKGROUND

20

21

7.      Plaintiff filed an amended SF-95 which was acknowledged by letter from the VA on June

22   22, 2015  and received his final denial on September 20, 2017 from the U.S. Department of

23   Veteran Affairs, Office of the General Counsel, Washington, D.C. 20420; signed by Pamela

24   Allen for E. Douglas Bradshaw, Jr. Veteran has until March 20, 2018 to file a Federal Tort Claim

25   against the U.S.A...

26

27

8.      Prior to the veteran becoming sick and going to the Dallas VA, the 65-year old veteran

28   was a fit and athletic man.  The veteran had never made any complaints to the Dallas VA of

1   persistent neck, shoulder, arm nerve pain from day to day, week to week, month to month or year

2   to year pain, including muscle weakness and muscle atrophy.

3

4   9.    Veteran was unaware that his injuries were caused by the robotic assisted surgery used in

5   his left renal surgical procedure on 12/23/2014. Plaintiff learned in January 2018 that the robotic

6   assisted device used during his surgery is the Da Vinci Robotic Surgical System by Intuitive

7   Surgical. Veteran woke up in immediate pain from his right eye and left arm. The pain was a

8   level 10 upon waking up. The nerve on the inside of his left bicep was throbbing about once per

9

10  second and the pain was acute. From mid bicep to mid forearm on his left arm the veteran was

11  experiencing a burning sensation like someone poured gasoline on his arm and set it afire.

12

13  10.   Dr. Jeffrey Shoss representing the Dallas VA chose to call Mr. Sterling on a Saturday

14  night in December 2014 at 7:30 pm to convince him that the RFA, radio frequency ablation was

15  not the best choice for his left kidney cancer procedure. Dr. Shoss spent 45 minutes to convince

16  Mr., Sterling that the robotic surgery was the best choice because he could remove the part of the

17  kidney that was cancerous and additional healthy tissue to ensure the all the cancer was removed;

18  and if he did not get it all, then RFA would be an option. Dr. Shoss told Mr. Sterling that he

19  would lose a small portion of his left kidney but he should not lose the entire kidney unless there

20

21  were complications. However, a Bosniak IIF tumor grew immediately after the surgery as a

22  residual tumor. Dr. Shoss did not inform the veteran that a tumor could and would regrow

23  immediately after surgery. The veteran was shocked that he had another tumor and that tumor

24  was rated at less than 10% cancerous. Dr. Shoss did not explain the procedure in detail, his

25  training in the device or any hazards associated with the robotic assisted surgery. Dr. Shoss at no

26  time informed this veteran that the robot assisted surgery could cause permanent and irreversible

27  nerve damage to his body. Dr. Shoss told Mr. Sterling that the robotic surgery was **safe and this**

28

1 **was repeated to Mr. Sterling over and over**. Mr. Sterling relied on Dr. Shoss as a urology

2 surgeon to present him with the best advice, the safest method and one that would ensure the

3 cancer was completely removed. Mr. Sterling had already met with RFA pre-op, Dallas VA, to

4 learn about the RFA procedure. Mr. Sterling was informed that the RFA procedure was more

5 than capable of removing the cancer and he would only be in the Dallas VA hospital for one or

6 two days. Mr. Sterling was informed the RFA would kill the cancer and a slight amount of the

7 surrounding tissue and that his body was absorb the dead tissue. When Dr. Shoss called Mr.

8 Sterling on a Saturday at 7:30 pm, Mr. Sterling was shocked that the VA would call him to

9 convince him to change his mind when the VA had already convinced him to use the radio

10 frequency ablation, RFA. The Dallas VA was conflicted within their own clinic on the best

11 procedure leading to confusion and mistrust by the veteran.

12 11.    Plaintiff Phillip J. Sterling was a 65-year-old patient who underwent surgery at the Dallas

13 VA for left kidney cancer on 23December2014. Upon entering the Dallas VA hospital on

14 12/23/2014, the veteran was a healthy adult male with the only medical condition known to him

15 was the diagnosed left kidney cancer. The veteran had no history of nerve damage to his body.

16 There is no history of the veteran complaining of chronic nerve injuries, shoulder pain,

17 headaches, muscle pain and atrophy from his discharge in 1974 to 12/23/2014. The veteran has

18 not sought out any medical attention for any of those injuries listed above on a day to day, week

19 to week, month to month or year to year necessity. The veteran had made no complaint

20 concerning any pain, injury to his body upon arrival at the Dallas VA on 12/23/2014. There is

21 no mention by the pre-op nurse of any complaint by the veteran regarding any pain, trauma to

22 any part of his body. This veteran entered the Dallas VA injury free and left the Dallas VA

23 crippled for life. Upon waking up after surgery, Phillip J. Sterling was in immediate severe pain

from his right eye, and arm.  The veteran did NOT delay in reporting his injuries to the Dallas VA.  Mr. Sterling's brother, veteran's son and daughter was present when the veteran woke up after surgery and witnessed the extreme pain the veteran was in and asked "what happened to him?"  The veteran's brother stood at the door and observed his brother for several minutes without speaking to him and asked one of the recovery room nurses "what is wrong with my brother?"  One of the nurse's present looked at my brother to state she was going to go get a doctor.  The brother could hear the veteran cry out in pain, "my eye, my eye, my eye".  However, if the veteran had eye protection on how could the veteran sustained an eye injury especially since the anesthesiologist had put the veteran to sleep and the veteran's muscles are essentially paralyzed during the operation.  As a result of the left kidney cancer surgery, Phillip J. Sterling, had sustained injuries to his right eye, neck, neuromuscular damage to his: left shoulder, left arm, left hand and left leg that the veteran will never recover from.  In addition, Mr. Sterling has had to undergo multiple surgeries as a result of those injuries sustained on 12/23/2014.  Those surgeries to include neck fusion, and left thumb joint replacement.  Mr. Sterling has complained of debilitating headaches 3 months after his neck surgery.  Mr. Sterling has complained repeatedly of weakness, muscle atrophy, nerve pain on the left side of his body: to include, neck, shoulder, arm and hand.

12.     In January of 2015, the Dallas VA sent Mr. Sterling to UTSW neurosurgery on a consult to see Dr. Bradley Lega.  Dr. Lega informed Mr. Sterling that he needed surgery immediately because if he did not have surgery, he (the veteran) would be dead or paralyzed from the neck down within one year.  In addition, the veteran asked Dr. Leg his opinion on how the veteran had sustained so many injuries during his kidney surgery while unconscious.  Dr. Lega stated that obviously, "something happened" but could not surmise any details since he was not present at

1  the surgery. On March 5, 2015, Dr. Lega performed surgery on Mr. Sterling at the Dallas UTSW

2  hospital.  Dr. Lega stated in writing to the veteran that the injuries he sustained resulted in a

3  residual 30% loss in gait function and strength to the left side of his body on April 12, 2017.

4

5  13.    On 5/28/2015 at 10:46 am, this veteran met with Dr. Benjamin Bourdeaux with Dallas

6  VA neurosurgery clinic and states in the doctor's progress notes: **History of Present Illness**,

7  "The patient returns to the VA neurosurgery clinic for follow-up evaluation. He is the

8  unfortunate veteran who sustains what appears to be incomplete spinal cord injury after his

9  elective abdominal surgery in 12/2014."

10

11  14.    On 2/25/2016, veteran underwent a C&P exam at the Fort Worth VA Texas for

12  evaluation of his injuries sustained on 12/23/2014.  Dr. Mitchell Brooks, wrote an opinion:"

13

14  OPINION #2:

15  It is greater than 50% as likely as not that the Veteran's current shoulder
   complaints are the result of and caused by aggravation, enhancement and
16  acceleration of those processes as a result of the noted surgery. This Veteran
   was placed in the left modified flank position and in this position, for more
17  than 4 hrs and 5 minutes, the left shoulder underwent significant and sustained
   impingement forces that would almost certainly account for his current c/o
18  pain, his brachial plexopathy and the motor findings noted in the clinical
   evaluation. The time in this position was likely closer to 5 hours. The
   position also account for the axillary triangular pain experienced by the
19  Veteran as well as the aforementioned weakness and loss of hand function.

20  OPINION #3:

21  The muscle atrophy that is present and contributory to the left upper extremity
   weakness is the result of the pathology caused by the positioning and its
   length of time in the form of pain and aggravation of the glenohumeral pathology
22  as well as the noted disability secondary to brachial plexalgia. This atrophy
   significantly compromises function and is a factor mitigating a surgical
   solution.

23

24  /es/ MITCHELL D BROOKS, MD
   MD
25  Signed: 02/25/2016 14:19                                                               ".

26

27

28

1    On 7/22/2015, veteran, kept his appointment to PM&R for evaluation of his shoulder/arm

2    complaints.  Progress notes states:"

3

4    CC:
     LEFT shoulder pain, decreased ROM

5    Referred by: Neurosurgery for a physiatric shoulder consult and recommendations

     History: Right handed
6    ONSET: Began 12-23-14 after he had kidney surgery and awoke with severe left
     arm pain, numbness and weakness. He was found to have cervical injury and
7    subsequently underwent a C2-6 PCDF at UTSW on 1/6/15. He has persistent pain,
     paresthesias and weakness of his left shoulder and arm with movement.
8    He has had EMG ordered and an Orthopedic surgical consult placed.
     Pt asked me why this appt was scheduled and expressed his disappointment that
9    he was not seeing a shoulder surgeon today.

     PROGRESSION: persistent
10   INTENSITY: 9-10/10 VAS
     TIME FACTORS: frequent
11   DESCRIPTION: sharp, burning of left arm
     LOCATION: Anterior shoulder
12   ASSOCIATED SYMPTOMS: paresthesias of the left arm into the hand
     AGGRAVATING FACTORS: Putting pressure, lifting, elevation, rotation
13   RELIEVING FACTORS: rest
     ASSOCIATED NECK PAIN: yes
14   ASSOCIATED WEAKNESS: yes, decreased arm and grip strength of LUE
     TREATMENT HISTORY: oral medications
     INJURY HISTORY: As above                                                    ".

15

16

17   Veteran has asked every doctor, physical therapist he has met with to explain to him how he

18   was injured.  Veteran always get the same response: "obviously something happened" but we

19   cannot comment since we were not present during the surgery.  They(VA employees) also

20   comment that they do not understand how I sustained injuries to areas of my body that were not

21   not operated on.  Recorded in his VA medical records as a result of the multiple times of asking

22   and seeking medical help for what he did not understand, are psychologically demeaning

23   statements by treating doctors at Dallas VA neurosurgery clinic. The Dallas VA has attempted

24   to undermine the veteran's own investigation of his injuries hoping the veteran will finally give

27   up hope of getting the help he needed.

28

15.     Veteran has attempted on several occasions to obtain information from the Dallas VA on how he was injured but has been met with hostility, run around and the deliberate attempt by the Dallas VA to conceal the injuries suffered by this veteran by the Dallas VA.  From the date of the kidney surgery to present (3 years 2 months), the Dallas VA has not formally acknowledged the injury, how he was injured and in what manner he was injured and who was present during the surgery. Mr. Sterling has sent email to Wanda Lee, (executive offices), USPS certified mail and has come in person to the Dallas VA executive offices requesting a meeting with the Director to discuss his medical complaints.  To date, the director of the Dallas VA has never responded to the veteran's request.

The VA gives the veteran specific rights as defined by the VA "patient bill of rights", https://www.va.gov/health/rights/patientrights.asp, specifically states:

- "
  You will be given, in writing, the name and title of the provider in charge of your care. You have the right to be involved in choosing your provider. You also have the right to know the names and titles of those who provide you care. This includes students and other trainees. Providers will properly introduce themselves when they take part in your care.

And:

- You will be informed of all outcomes of your care, including any possible injuries associated with your care. You will be informed about how to request compensation and other remedies for any serious injuries."

16.     Veteran sent the Dallas VA USPS certified mail 7008 3230 0003 4115 2155 on January 29, 2018 in a final demand for the Dallas VA to comply with how the veteran was injured.

17.     The Dallas VA has never given the veteran the name, title of those involved in his care during the left kidney cancer surgery on 12/23/2014.  The VA has never advised this veteran

1  how to request compensation and other remedies for serious injuries other than to file a tort claim

2  against the Dallas VA.

3

4  18.  On March 3, 2015, Scott Foster representing the Dallas VA called Mr. Sterling at 10:48

5  am from 214-742-8387 to advise Mr. Sterling that he could file a tort claim against the Dallas

6  VA for his injuries sustained on 12/23/2014. See "Exhibit 6". Mr. Sterling asked Scott Foster

7  why he needed to sue the VA and Mr. Foster informed the veteran that again he needed to seek

8  legal advice. Veteran was confused as to why he needed a lawyer since he was a veteran who

9  underwent surgery at the Dallas VA.

10

11  **Exhibit 6**

12

13

14

15  **VA Hospital**

16  Yesterday

17  10:48 AM    **Outgoing Call**    12 minutes

18  main

19  **(214) 742-8387**

20  Notes

21  Scott foster called 3/4/2015 regarding arm damage

22  Milligan is director of hospital

23  Send Message

24

25

26  19.  The veteran went to Dallas neurosurgery in 2015 and spoke to Daphne, the veteran was

27  very emotional and Daphne explained to Mr. Sterling that he needed to see Anesthesiology who

28  would be responsible for positioning him during the robotic surgery. Daphne took Mr. Sterling

1  to Ed Perry at the Anesthesiology Dept. at the Dallas VA.  Mr. Sterling explained his injuries to

2  Mr. Perry who stated he would do an investigation and get back to Mr. Sterling in 2 weeks.

3  After one month, Mr. Sterling contacted Mr. Perry via USPS mail.  Mr. Perry left Mr. Sterling a

4  voice message that he had been advised by legal not to speak to Mr. Sterling and Mr. Perry stated

5  he hoped that Mr. Sterling did not contact his Congressman or VA secretary regarding this

6  matter.  Mr. Sterling called Mr. Perry to discuss his voice message.  Mr. Perry refused to talk to

7  Mr. Sterling and hung up.

8

9

10  20.    Mr. Sterling went to the Dallas VA and met with Cheryl Johnson, FOIA privacy officer,

11  and requested documentation of the injuries he sustained on 12/23/2014; and, the training,

12  credentials of Dr. Jeffrey Shoss.  Mr. Sterling received a letter stating there were "no records" of

13  his surgery on 12/13/2014 and no information on a Dr. Schoss.  The veteran specifically wrote

14  down the correct date and the correct spelling of Dr. Shoss and handed it to Ms. Johnson.  There

15  can be no excuse of such error; veteran received a letter from Ms. Johnson stating he could file

16  an appeal.  The veteran did so and has yet to receive a reply.  The veteran filed another FOIA

17  request with Ms. Johnson and is waiting for a reply.

18

19

20  21.    Mr. Sterling reached out to his Congressman Jeb Hensarling for his assistance regarding

21  the injuries sustained at the Dallas VA.  Mr. Sterling has received multiple letters from

22  Congressmen Hensarling with Dallas VA response to the Congressman's inquiry.  The last

23  paragraph of the VA's response states:" I appreciate the opportunity to address Mr. Sterling's

24  concerns.  If Mr. Sterling has further questions, he may contact John Loughlin, Administrative

25  Officer, Surgical Services at 214-857-1801.  Signed Jeffrey L. Milligan, Director, December 30,

26  2016. Mr. Sterling has many more of these letters from the Dallas VA stating they(VA

27

28  employees) are willing to speak to the veteran but to date the veteran has never been able to

1  speak to any of these individuals representing the Dallas VA.   The veteran has called the above

2  phone number on several occasions and the phone just rings and rings.

3

4  22.   The veteran kept his Urology appointment with PA Hartman on February 2, 2018.

5  Veteran asked Mr. Hartman about his injuries that occurred on 12/23/2014; Mr. Hartman stated:

6  "that if I (veteran) wanted the VA to comply with the law then I would need to force the VA to

7  comply". I told PA Hartman that he is protected by the Whistleblower Act, PA Hartman said the

8  VA would find some way to retaliate against any employee who went against the VA. I asked

9  you mean, "firing"? PA Hartman replied: "Yes".

10

11  23.   The Dallas VA breeds a culture of employee intimidation so as the employees are prone

12  to protect the VA versus helping the veteran who has been injured at the Dallas VA.

13

14  24.   "I'm 68, and for the rest of my life I'm going to be looking at those scars and reminded

15  every day of the horrific pain I went through at the Dallas VA on 12/23/2014".

16

17  25.   The veteran has complained about the amount of prescription medication the Dallas VA

18  has prescribed to him and the harmful effects these drugs have had on his body.   The Dallas VA

19  is predisposed to "throwing" medication at the veteran versus performing medical

20  troubleshooting and isolating the root of the medical complaint.   The veteran has enough

21

22  medication to probably kill a herd of elephants at his home.

23

24  26.   **Residual Affects According to Subsequent Medical Records**

25      neck surgery to avoid paralysis from the neck down or death
        weakness, pain and nerve damage to left shoulder
26      weakness, pain and nerve damage to left arm
27      weakness, pain and nerve damage to left leg
        chronic pain
28

1
2
3
4
5
6
7
8
9

       chronic headaches
       veteran wears a knee brace
       chronic fatigue
       functional gait disorder
       uses a cane
       suffers from emotional trauma
       suffers from physical trauma
       severe muscle atrophy on left side
       tremors in his left hand
       chronic cough with phlegm production
       Sensory symptoms-burning of the left arm
       stabbing pain in left leg
       numbness in left arm
       left thumb joint replacement

10
11

## **ASSERTION**

12   27.   Veteran asserts that the Texas Medical malpractice time limit of 2 years to file a medical

13   claim against a hospital does not apply in this case because the veteran's care is ongoing and the

14   Dallas VA has been deceptive about the injuries suffered by the veteran.  In fact, I was told :

15   "make us(VA) comply with the law".  The veteran was told by anesthesiology clinic that "legal"

16   had advised him, Ed Perry, not to speak to me anymore.  The veteran tried to learn the truth but

17
18   the Dallas VA refused to assist him in learning the truth.  Not knowing what happened to me, is a

19   terrible emotional tragedy the Dallas VA has placed on the veteran, leaves me, the veteran in

20   "limbo".  The Dallas VA has committed several acts of negligence against this veteran.  The

21   veteran asserts that the Dallas VA: 1.  Injured him on 12/23/2014 causing neuromuscular damage

22
23   to the left side of his body by the Da Vinci Robotic surgical system; 2. The Dallas VA failed to

24   inform the veteran that he had a residual tumor that appeared on his left kidney 3.  The veteran

25   has been suffering debilitating headaches from July 2015 after recovering from neck surgery at

26   UTSW Dallas.  The Dallas VA has made very little effort in finding the source of these

27   headaches.  Over 2 years have pasted and the best the Dallas VA can do is to refer me back to

28   Dr. Lega at UTSW Dallas, a neurosurgeon.

# IV. FIRST CAUSE OF ACTION:

## VIOLATION OF THE VETERAN CLAIMS ASSISTANCE ACT OF 2000

### (Alleged against all Defendants)

28.     Plaintiff incorporates by reference all paragraphs above as though fully set forth herein.

29.     Veteran attempted on several occasions to find out how he was injured on 12/23/2014. Veteran went to Urology for answers who referred him to Anesthesiology who referred him to Neurosurgery who referred him to PCP (primary care provider Dallas VA).

30.     Veteran requested in writing to the Director of the Dallas VA for answers on his injuries that were sustained on 12/23/2014.  To date, the Dallas VA director or his staff has never responded to the veteran's investigation of his injuries and request for evidence.

31.     Veteran requested assistance from his Congressman Jeb Hensarling in obtaining answers as to how he suffered multiple injuries on 12/23/2014, the Dallas VA responded to the Congressman with no supporting evidence on how the veteran was injured.

### PUBLIC LAW 106–475—NOV. 9, 2000

32.     **"§ 5103. Notice to claimants of required information and evidence**

''(a) REQUIRED INFORMATION AND EVIDENCE. Upon receipt of a complete or substantially complete application, the Secretary shall notify the claimant and the claimant's representative, if any, of any information, and any medical or lay evidence, not previously provided to the Secretary that is necessary to substantiate the claim. As part of that notice, the Secretary shall indicate which portion of that information and evidence, if any, is to be provided by the claimant and which portion, if any, the Secretary, in accordance with section

1  5103A of this title and any other applicable provisions of law, will attempt to obtain on behalf

2  of the claimant.

3

4                                      AND

5

6  **"§ 5103A. Duty to assist claimants**

7  ''(a) DUTY TO ASSIST. (1) The Secretary shall make reasonable efforts to assist a claimant in

8  obtaining evidence necessary to substantiate the claimant's claim for a benefit under a law

9  administered by the Secretary.

10

11  33.    Veteran filed an 1151 claim for medical injuries sustained at the Dallas VA on

12  12/23/2014.  Veteran has requested in writing all information regarding his surgery injuries on

13  several occasions via USPS certified mail, email, and in person at the Dallas VA executive

14  office, the veteran has filled out Dallas VA form request to see the Director of the Dallas VA on

15  several occasions with no response from the Director of the Dallas VA.

16

17  34.    Veteran has submitted multiple FOIA requests to the VA via USPS certified mail.

18

19  35.    As a proximate cause of Defendants' acts and omissions, individually and jointly,

20  Plaintiff endured physical and emotional suffering, loss of his ability to work at his own

21  business.  Mr. Sterling is a state licensed air conditioning and heating contractor licensed to

22  operate in the state of Texas.

23

24                          **V.  SECOND CAUSE OF ACTION:**

25                                  **NEGLIGENCE**

26                          **(Alleged against all Defendants)**

27

28  36.    Plaintiff incorporates by reference all above paragraphs as though fully set forth herein.

37.     Dallas VA, surgeon and staff did not accurately detail the robotic injuries on medical records. Dallas VA failed to do so.

38.     Dallas VA has a legal duty owed to the veteran to protect the veteran against injury on 12/23/2014. Dallas VA breached that duty.

39.     Dallas VA had a duty to explain to the veteran how the robotic assisted surgery would be performed along with any known hazards.   Dallas VA failed to do so.

40.     Dallas VA had a duty to warn the veteran of the risks from robotic surgery resulting in neuromuscular damage to the veteran's neck and left side of his body.  Dallas VA failed to do so.

41.     Dr. Shoss, surgeon for the Dallas VA had a duty to notify Plaintiff of the risks of surgical robotic procedure and his training with credentials on the device. Dr. Shoss for Dallas VA failed to do so.

42.     Dallas VA had a duty to inform the veteran of his injuries sustained on 12/23/2014. Dallas VA failed to do so.

43.     Dallas VA had a duty to provide the Plaintiff with the names, title of all those involved in his left kidney surgery care. Dallas VA failed to do so.

44.     Dallas VA had a duty to provide to the veteran the training and credentials of the operating surgeon, Dr. Jeffrey Shoss had on the robotic device.   Dallas VA failed to do so.

45.     Plaintiff alleges that the operating surgeon, Dr. Shoss and his staff did not have the proper training, credentials and experience necessary to protect the veteran from injury.  Veteran refers to **Taylor v. Intuitive Surgical Inc.,** in which experts testified at trial that "confidence" with the device is not achieved until a surgeon has completed 150 to 250 procedures.

36. Dallas VA failed to prescribe medication to the veteran so as to ease his nerve pain to the left side of his body from his injuries sustained on 12/23/2014. Veteran was unable to sleep for days on end. In fact, the veteran did not sleep until he met with his PCP on January 23, 2015 and was prescribed medication for his nerve pain and sleep aids. Dallas VA failed to do so.

46. Dallas VA did not provide physical therapy immediately after recovering from surgery to the veteran so as to minimize the trauma to his body. Dallas VA failed to do so.

47. Dallas VA did not investigate the veteran's complaint of shoulder pain and inability to raise his arm over his head until months after the surgery. Dallas VA failed to do so.

48. Dallas VA delayed sending the veteran to the Dallas VA specialized clinics who specialize with the type of injuries the veteran had sustained. Dallas VA failed to do so.

49. Dallas VA failed to provide adequate continuity of care to ensure that Mr. Sterling's medical problems were properly evaluated and treated. Dallas VA failed to do so.

50. Dallas VA and staff did not accurately document the veteran's injuries in the surgical notes, progress notes of the veteran. Dallas VA failed to do so.

51. As a proximate cause of Defendants' acts and omissions, individually and jointly, a series of poor medical judgement by multiple Dallas VA clinics resulted in prolonged physical suffering, neuropathy pain, and other secondary injuries, as a result of weakness, pain, muscle atrophy suffered by the veteran on his left side and neck.

52. As a proximate result of Defendants' conduct, Plaintiff has incurred actual, incidental, and consequential damages according to proof. Plaintiff suffered emotionally and physically as a proximate result of the incident, dated 12/23/2014.

## VI. THIRD CAUSE OF ACTION:

## MEDICAL MALPRACTICE

53.   Plaintiff incorporates by reference all above paragraphs as though fully set forth herein.

54.   The Dallas VA had a duty of care to the Plaintiff once they admitted him for treatment.

55.   Dallas VA had a duty to inform the veteran the licensing and credentials of the surgeon who would be operating on him. The Da Vinci requirements are minimal:

## SURGEONS MUST COMPLETE THE FOLLOWING STEPS TO USE THE DEVICE:

- Take one hour of online training

- Watch two robotic procedures online (four hours)

- Spend seven hours operating on a pig

- Participate in at least two surgeries overseen by an experienced robotic surgeon

56.   The Dallas VA had a duty to explain to the Plaintiff the full procedure of the robotic surgery and to answer any questions the veteran might have prior to the surgery. Dallas VA failed to do so.

57.   The Dallas VA had a duty to explain the risks of this type of surgery.  In fact, Dr. Shoss told Mr. Sterling that this type of surgery was "safe".  Dallas VA failed to do so.

58.   Dallas VA talked Mr. Sterling out of RFA ( radio frequency ablation) procedure that the Urology doctors already felt was the "best" solution in removing the cancer. The Dallas VA asked Mr. Sterling to "opt out" of the RFA procedure for the robotic surgery which was more dangerous and longer surgical procedure. Dallas VA and the surgeon knew robotic surgery was

1  a more complicated, dangerous operation for the 65-year-old veteran.  Dallas VA failed to tell

2  the veteran he had spinal stenosis of the neck and he would be at risk for injuries during a robotic

3
4  surgery. The Dallas VA had done imaging noting the stenosis prior to the surgery and knew

5  beforehand that RFA was the "best" medical procedure.  However, Dr. Shoss talked Mr. Sterling

6  out of the RFA procedure via a telephone call to the veteran on a Saturday night.

7      59.    Dallas VA used contrast dyes following his cancer surgery for monitoring his cancer in
8
9  Radiology Procedures on the veteran such as: CT scan, MRI'S knowing that the contrast could

10  cause renal failure.  The Veteran is 50% more likely to suffer renal failure as a result of losing

11  part of his left kidney when injected with contrast for CT scan.  In fact, on one occasion the CT

12  tech missed his artery and injected the contrast into the surrounding tissues causing swelling of

13  the tissues and the veteran pain.
14

15      60.    As a direct result of the Dallas VA actions, Plaintiff sustained multiple injuries to his

16  body from which he will never recover from  Accordingly, Plaintiff's  has incurred actual,

17  incidental, and consequential damages according to proof.
18

19                          **VII. THIRD CAUSE OF ACTION:**

20            **VIOLATION OF TEXAS DECEPTIVE TRADE PRACTICES ACT**

21      61.    VA North Texas Health Care System failed to disclose the dangers of robotic assisted
22
23  surgery. Dallas VA knew the dangers of robotic assisted surgery and failed to inform Mr.

24  Sterling that he could suffer permanent neuromuscular damage.  Dallas VA intent was to induce

25  Mr. Sterling to "opt out " of RFA for the Da Vinci Robotic surgery which was a much more

26  dangerous and lengthy procedure.  Mr. Sterling would not have agreed to change procedures had

27  he known the severe risks of robotic surgery.  Dr. Shoss, representing Dallas VA called Mr.
28

1  Sterling and talked him out of RFA procedure and advised Mr. Sterling that the robot assisted

2  surgery was "safe".  This advice by Dr. Shoss was NOT in the veteran's best interest and

3  resulted in the veteran's crippling injuries.

4

5  62.    VA North Texas Health Care System and Dr. Shoss misrepresented the safety of the

6  robotic assisted surgery by omissions.

7

8  63.    A North Texas Health Care System and Dr. Shoss advised Mr. Sterling to "opt out "of the

9  RFA procedure knowing that the risk to injury was extremely low from the RFA procedure.

10  Dallas VA knew the veteran was distraught from learning that he had cancer. The veteran had no

11  knowledge or experience of medical cancer diagnosis and their treatments; this(cancer) was all

12  new to him, the veteran was being pressured into making a decision by the Dallas VA due to

13

14  time in scheduling surgery for the veteran.  Dallas VA violated the TDTPA as defined by:

15  Business and Commerce Code, Title 2, Chapter 17, Sec. 17.45: "Unconscionable action or

16  course of action" means an act or practice which, to a consumer's detriment, takes advantage of

17  the lack of knowledge, ability, experience, or capacity of the consumer to a grossly unfair

18  degree.

19

20  **VII. THIRD CAUSE OF ACTION:**

21  **FRAUD**

22

23  64.    Dr. Shoss representing the Dallas VA as a Urology surgeon knew the Da Vinci robotic

24  system was dangerous. Dr. Shoss represented to the veteran that this robotic surgery was "safe".

25  Dr. Shoss talked the veteran out of the RFA procedure for the more dangerous robotic surgery.

26  The surgeon never informed the veteran that he could suffer permanent nerve injuries. The

27  veteran had imaging done at the Dallas VA and this surgeon knew the veteran had spinal stenosis

28

in his neck.   The Dallas VA never told the veteran in 2014 he had spinal stenosis even though the stenosis was noted on multiple imaging reports. Dallas Urology had originally recommended radiofrequency ablation (RFA) as the best method for the safe elimination of the veteran's cancer in his left kidney.   The Dallas VA used the veteran's ignorance of surgical procedures to entice the veteran to "opt out" of the RFA procedure for the more dangerous robotic surgery. The Dallas VA knew the veteran was distraught over learning of the cancer and used the veteran emotional status to persuade him to "opt in" for the robotic surgery.

65. The VA knew of veterans pre-existing medical conditions prior to surgery. After, surgery the VA was aware of the veteran's request for assistance. The VA failed to disclose to the veteran on their own that the veteran was injured.   The VA used multiple layers of denial via the surgeon, anthesiologist, and other medical staff /administration personnel for over 3 years. In the meantime, there is factual evidence that the VA knew of the veteran's nerve injury 9 days after surgery and that information was kept confidential from the veteran; but the VA still denied to the Veteran there were no factual proof of injury even though the VA had the proof in their hands since Jan.1, 2015. This was 9 days after the injury took place. In addition, this request was made through the Dallas VA FOIA privacy officer, Cheryl Johnson.

66. Dallas VA risk management colluded with various Dallas VA medical clinics by way of intimidation to prevent this veteran from learning the facts.   VA risk management sought to severe the veterans legal rights in favor of protecting the Dallas VA hospital. The Dallas VA medical staff violated the sacred oath of "Do No Harm".   The Dallas VA harmed the veteran: emotionally, physically and monetary.

1    67.   Dallas VA sent the veteran to UTSW Dallas for several appointments from 2015 to

2 present. The Dallas VA made the consults for the veteran at the Dallas VA hospital to be seen at

3 a non-care medical facility.   The Dallas VA knew that the veteran was entitled to travel pay for

4
5 the trips made to the Dallas UTSW hospital for approximately 103 appointments.   The veteran

6 did find out until 2017 that he was entitled to the travel pay.   Mr. Sterling sent the Dallas VA

7 notice that he wanted reimbursement for the travel and parking fees.   Dallas VA denied Mr.

8 Sterling's request for payment because they state I, the veteran, must submit the travel pay form

9 within 30 days. The Dallas VA knew the veteran was entitled to travel pay, failed to notify him

10
11 and then the Dallas VA blames the veteran for not filing within the 30-day time frame. The

12 Dallas VA acts like this is the first time this issue has ever came up at this veteran hospital.   This

13 is a deliberate attempt to cheat the veteran out of money he could use for food, house expenses.

14 The Dallas VA knows the veteran is 100% disabled because the Dallas VA is responsible for

15 crippling him.

16

## XVIII. PRAYER FOR RELIEF

17

18     WHEREFORE, Plaintiff prays judgment against DEFENDANTS as follows:

19
   1.    For compensatory damages, according to proof;
20

21    2.    For punitive damages, as to each of the Defendants, in an amount of: $2,000,000.00;

22
23   3.    For exemplary damages, as to each of the Defendants, in an amount of $ 3,000,000.00;

24    4.    Treble damages for TDTPA;

25
26   5.    For costs of suit; and

27
28   6.    For such other and further relief as the court may deem proper.

1

## CONCLUSION

2

3  In CONCLUSION, the Veteran Affairs has brought dishonor to itself.  This VA is broken to the

4  point where instead of helping this veteran to recover from his injuries; this VA delays treatment,

5  hides the truth, withholds vital facts and fails to advise and counsel the veteran of his rights for

6  compensation and benefits.  This VA would have been better to leave the veteran wounded and

7  bleeding on the battlefield to die than to dishonor him in such a fashion.

8

9  DATED: _____, 2018

10

11

12  Phillip Sterling, Pro Se
    3230 San Vicente Avenue
13  Dallas, TX 75228
    214-274-0063
14  phillipsterling@swbell.net

15

16

17

18

19

20

21

22

23

24

25

26

27

28

JS 44 (Rev. 06/17) - TXND (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

*Phillip Sterling*

**(b)** County of Residence of First Listed Plaintiff *DALLAS*
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

## DEFENDANTS

*United States of America*

County of Residence of First Listed Defendant *Dallas*
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

*U.S. Attorney*

3:18-0526-D

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☐ 3 Federal Question *(U.S. Government Not a Party)*
- ☒ 2 U.S. Government Defendant
- ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff)*
*(For Diversity Cases Only)* and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal | ☐ 376 Qui Tam (31 USC |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Product Liability | | 28 USC 157 | 3729(a)) |
| ☐ 140 Negotiable Instrument | Liability ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & Pharmaceutical | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| & Enforcement of Judgment | Slander Personal Injury | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted | Liability ☐ 368 Asbestos Personal | | ☐ 835 Patent - Abbreviated | ☐ 460 Deportation |
| Student Loans | ☐ 340 Marine Injury Product | | New Drug Application | ☐ 470 Racketeer Influenced and |
| (Excludes Veterans) | ☐ 345 Marine Product Liability | | ☐ 840 Trademark | Corrupt Organizations |
| ☐ 153 Recovery of Overpayment | Liability **PERSONAL PROPERTY** | **LABOR** | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| of Veteran's Benefits | ☐ 350 Motor Vehicle ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle ☐ 371 Truth in Lending | Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ |
| ☐ 190 Other Contract | Product Liability ☐ 380 Other Personal | ☐ 720 Labor/Management | ☐ 863 DIWC/DIWW (405(g)) | Exchange |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal Property Damage | Relations | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury ☐ 385 Property Damage | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| | ☒ 362 Personal Injury - Product Liability | ☐ 751 Family and Medical | | ☐ 893 Environmental Matters |
| | Medical Malpractice | Leave Act | | ☐ 895 Freedom of Information |
| **REAL PROPERTY** | **CIVIL RIGHTS** **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights **Habeas Corpus:** | ☐ 791 Employee Retirement | ☐ 870 Taxes (U.S. Plaintiff | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting ☐ 463 Alien Detainee | Income Security Act | or Defendant) | ☐ 899 Administrative Procedure |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment ☐ 510 Motions to Vacate | | ☐ 871 IRS—Third Party | Act/Review or Appeal of |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Sentence | | 26 USC 7609 | Agency Decision |
| ☐ 245 Tort Product Liability | Accommodations ☐ 530 General | | | ☐ 950 Constitutionality of |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - ☐ 535 Death Penalty | **IMMIGRATION** | | State Statutes |
| | Employment **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 446 Amer. w/Disabilities - ☐ 540 Mandamus & Other | ☐ 465 Other Immigration | | |
| | Other ☐ 550 Civil Rights | Actions | | |
| | ☐ 448 Education ☐ 555 Prison Condition | | | |
| | ☐ 560 Civil Detainee - | | | |
| | Conditions of | | | |
| | Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☐ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
*FTCA*
Brief description of cause:
*Federal tort claim - VA malpractice - medical*

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $ *greater than $75,000.00*

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____  DOCKET NUMBER _____

DATE _____  SIGNATURE OF ATTORNEY OF RECORD _____

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____